Metropolitan Life Insurance Company, Appellee, v. William A. Ohlhaver et al., Appellants.

Gen. No. 9,026.

Opinion filed March 24, 1936. Rehearing denied April 7, 1936.

FRISCH & FRISCH, of Chicago, for certain appellant; SAMUEL J. NORDORF, of Chicago, of counsel.

HENRY C. WARNER, of Dixon, and ROY J. SOLFISBURG, of Aurora, for appellee.

MR. JUSTICE DOVE delivered the opinion of the court.

On August 1, 1925, William A. Ohlhaver and Alice M. Ohlhaver, his wife, being the owners of 258.78 acres of farm land in Kendall county, executed their mortgage thereon to the Savings Bank of Kewanee. The mortgage was given to secure the payment of $32,250 and was duly recorded on August 27, 1925. By proper written assignment, which was recorded on December 4, 1925, the notes and mortgage were transferred by the Savings Bank to the Metropolitan Life Insurance Company. Default having been made in the payment of the indebtedness so .secured by said mortgage, the Life Insurance Company, on June 27, 1932, filed its

bill to foreclose its mortgage, making, among others, the Chicago Tube and Iron Company, a corporation, a party defendant. On October 24, 1932, the Tube and Iron Company filed its answers in the nature of intervening petitions. In one of the intervening petitions it set forth that as a subcontractor it was entitled to a mechanic's lien upon said premises to the amount of $11,055.74 by reason of it having furnished certain materials and supplies to Ralph R. Wymer, who had a written contract to improve said premises as a golf course. The other intervening petition filed by the Tube and Iron Company claimed a lien upon said premises as assignee of said Wymer and this petition set forth that Wymer had a mechanic's lien on said premises as a general contractor to the amount of $42,970.49 upon a written contract for work, labor and material furnished in improving said real estate as a golf course. After the issues had been made up the cause was referred to the master in chancery, who took the evidence and reported the same, together with his conclusions to the court. Upon a hearing before the chancellor, certain exceptions to the master's report were sustained and others overruled, and the chancellor entered a decree finding, as the master had found, that there had been no increase or enhancement in the market value of the premises by reason of the construction by Wymer of the golf course thereon, that the liens of the Tube and Iron Company as subcontractor of Wymer and as assignee of Wymer as the general contractor were subject to and inferior to the lien of the Life Insurance Company. The decree found the amount due the Life Insurance Company about which there is no dispute and held that its lien is a first lien upon the premises, and ordered the sale of the premises in default of paying the amount so found due. From this decree the intervening petitioner, Chicago Tube and Iron Company, prosecutes this appeal.

The master and chancellor both found from the evidence that the value of the 258.78 acre farm covered by appellee's mortgage was not increased by its conversion into a golf course. It is first insisted by appellant that this finding is manifestly and clearly against the weight of the evidence and second that if, from an examination of the evidence, this court concludes that the improvement did enhance the value of the mortgaged premises, that then the decree entered by the chancellor is palpably erroneous.

We have read all the evidence in this record and from this evidence it appears that the property covered by this mortgage is located on Route 22 between Aurora and Joliet, being about four miles south of Aurora and three and one-half miles from Oswego. At the time the mortgage was executed to appellee and up until 1930, the premises were improved by fences, a dwelling and barn, and was used exclusively for agricultural purposes. In 1929 the mortgagee, Ohlhaver, and a number of others caused to be incorporated the Villa Estates Golf Course. Ohlhaver became secretary of this corporation and in 1931 he and his wife conveyed the premises to this corporation, which executed a trust deed thereon to secure a bond issue of $125,000, and as soon as that was done, the premises were conveyed back to Ohlhaver by the corporation. Ralph R. Wymer, a golf course architect and construction engineer, was one of the incorporators and in November, 1929, Wymer and the Villa Estates Golf Course entered into a contract by the terms of which Wymer was to design and construct a 36-hole golf course on this farm, together with a practice hole consisting of a tee, fairway and putting green. In pursuance of the terms of this contract, Wymer prepared drawings and specifications for such a golf course and prepared the soil thereon and seeded the 37 greens, fairways and tees, put in traps, dug three lakes, widened, deepened and cleaned out the

creek, installed a fairway water system, furnished sand for the greens and top soil and laid 50,000 lineal feet of tile. Wymer purchased material which went into the construction of this course from appellee and the entire acreage of the farm was converted into a golf course. Wymer testified that for this work he received $55,000 in cash, besides $6,200 in stock in the corporation, leaving a balance of $37,849.49 due him under his contract. He further testified that thereafter he assigned his interest in the contract to the Chicago Tube and Iron Company, appellee herein, and on March 7, 1931, a claim for a lien was filed.

The evidence further discloses that the course was first opened during 1931 and that in that year only seven holes were in use; that at the beginning of the following season, 1932, less than 18 holes were in use, but before the season closed 18 holes were being played upon. During that year, it cost approximately $7,500 for maintenance, other than the taxes, and during the year the receipts aggregated $2,200. In 1933 up until July 25th, the time of the hearing, $1,800 was the total amount of the receipts. James P. Callan, a qualified and experienced real estate broker living in Aurora, was a witness called by appellee, and on cross-examination he testified that the land was not well located for a golf club. John McElhatton, who was a golf professional and who had built several golf courses and managed several others and who was at the time of the hearing manager and in charge of the Sky Harbor Golf Club west of Glencoe, testified that in his opinion this land had no value as a golf course in 1930 or in 1933; that he was familiar with the premises, had inspected the course in 1930 and again just before he testified and stated that he based his opinion as to it having no value as a golf course upon the fact that it could not possibly earn its upkeep.

The evidence as to the value of the premises before and after the improvement took a wide range. J. F.

Long testified that at the time of the hearing the value of the premises as a golf course was between $36,000 and $37,000; that for agricultural purposes its value was between $100 and $115 per acre. In the opinion of Mr. Wymer, the contractor, the farm in November, 1929, before he did any construction work thereon, was worth $250 per acre; that a year later, after it was converted into a golf course, he was of the opinion that it was worth $1,250 per acre. J. P. McDole testified that in his opinion the premises for farm purposes was worth $175 per acre in 1929; that the value thereof had been depreciated by the location of a golf course thereon and at the time he testified he expressed an opinion that the value of the premises was not to exceed $100 per acre. This witness gave as his reason for saying the value had been depreciated and not enhanced by the improvement was that much of the good soil had been removed from certain places on the farm and placed on the greens and fairways. Loren Hill testified that he was engaged in the real estate business at Aurora and expressed the opinion that in 1925 this land was worth $150 per acre; that it was worth $130 per acre on November 20, 1930, and that at the date of the hearing was worth $90 per acre. John Herron testified that in 1929 the land was worth $140 per acre, in 1930 between $100 and $110 per acre, and at the time of the hearing $90 per acre. Nicholas Fiddler testified that before any work was done, the land was worth $125 per acre and was worth the same amount at the time he testified. O. A. Burkhart testified that in 1929 before any work was done, the premises were worth $115 per acre and at the time of the hearing between $135 and $145 per acre.

Charles Maddox was called as a witness for appellant, and testified that he was formerly an official of the Chicago Golf Course Builders Corporation and had had 15 years' experience in building golf courses and had been interested in constructing 35 or 40

courses and was at the time of the hearing engaged in the same line of work. He testified that he played this course in 1930, was over it again in 1932 and had gone out and seen it just previous to the hearing in 1933. In response to a hypothetical question propounded to this witness, he gave it as his opinion that the 36-hole course described in the hypothetical question had a value of between $150,000 and $200,000 and that the work, labor and materials used upon the premises in constructing 18 holes enhanced the value thereof in 1931 between $40,000 and $75,000, and that the work, labor and materials used on the 36-hole course enhanced the value between $100,000 and $150,000.

Thomas J. Walsh also called as a witness by appellant testified that he was manager of the West Gate Valley Country Club at Worth, Illinois, was a golf professional and had managed the Olympic Fields Country Club and the Dixmoor Country Club. He further testified that he visited the premises covered by appellee's mortgage the morning he testified and he expressed an opinion that the transformation of the farm into the golf course enhanced the sale value of the property $75,000 for the 18-hole course and enhanced the value of the 36-hole course $150,000. He further testified that the amount of revenue received at a golf course makes very little difference in the value of golf course property, and the fact that the receipts from this course might be $3,000 or $90,000 would only slightly influence his opinion as to the value of the course. Mr. Wymer also testified that in estimating the value of golf courses he generally considered the income derived therefrom but in the instant case he did not as he was unadvised and had no knowledge what the amount of the income was or would be from this property.

The evidence further discloses that while the contract provided for the construction of a 36-hole course

and one additional practice tee, fairway and green, the contractor did not entirely complete his contract and considerable work remained to be done under the contract when the contractor was obliged to quit because of lack of funds. It is established by the evidence that it was not until the 1932 golf season was well advanced that 18 holes were played and no more than 18 holes were ever in use and the remaining 18 holes were entirely abandoned and soon reverted to weeds, grass, pasture and agricultural purposes.

There are three other golf courses in and near Aurora, the Phillips Park Golf Course, the Aurora Country Club and the Fox Valley Golf Course. No one can read this record without coming to the conclusion that this was a promotional venture which did not prove successful. That this was the view of the chancellor who heard this case in the lower court is disclosed by the record. He compared this improvement to the construction of a summer hotel erected in the country and whether the construction of such a building would appreciably enhance the value of the premises could not be determined until after the lapse of some time. If the premises before the construction of such a hotel was worth $50,000 and if $50,000 was expended in the erection of such hotel and if the venture ran along for a few years and then proved to be a failure and was patronized by no one, it certainly could not be successfully contended that the premises were enhanced in value any appreciable amount, and in such a suppositious case it would be highly inequitable to compel the original mortgagee to pro rate with a lien claimant.

The law cast upon appellant the burden of proving that the mortgaged premises in the instant case were enhanced in value by this improvement. In our opinion appellant has not met this requirement. The evidence fails to disclose that this improvement did en-

hance the value of this farm covered by appellee's mortgage and upon this question we are in complete accord with the findings of the chancellor, and being of this opinion it is unnecessary for us to determine whether the improvement is a lienable one or not.

The decree of the circuit court of Kendall county is affirmed.

*Decree affirmed.*